# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

SHARLENE BEGAY-PLATERO and
JOHN PLATERO, JR.,

    Plaintiff,

v.

GALLUP MCKINLEY COUNTY
SCHOOL DISTRICT,

    Defendant.

No. 18-cv-00861-PJK-SCY

# ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER is before the court on Plaintiffs-Movants Sharlene Begay-Platero and John Platero, Jr.'s motion for preliminary injunction as requested in their Application for Preliminary Injunction Hearing filed September 19, 2018. ECF No. 5. The court held an evidentiary hearing on April 25, 2019, and heard argument. Upon consideration thereof, the motion is not well taken and should be denied.[1]

---

[1] This case was transferred to the undersigned on March 29, 2019. ECF No. 19.

## Background

The movants bring this action on behalf of their children, who are juniors at Middle College High School (MCHS), a charter school in Gallup, New Mexico, against the Gallup McKinley County School District ("School District"). Pl.'s Resp. to Mot. to Dismiss 3 (ECF No. 12); see generally Compl. (ECF No. 1-1). According to the School District, after a school shooting in Aztec, New Mexico, it consulted with local law enforcement about strengthening security. An overriding concern was the risk of unidentified persons on school campuses during school hours and at non-public School District events. On April 20, 2018, School District superintendent Michael Hyatt circulated new security policies to principals. E-mail from Michael Hyatt, Superintendent, Gallup McKinley Sch. Dist., to ALLPrincipalsDistLis@gmcs.k12.nm.us (Apr. 20, 2018) (ECF No. 10-1). Included was a directive that "all dances or like events" be restricted to students from the nine high schools of the School District's "regular school system." Id.; see also Compl. ¶¶ 6–7. MCHS was not included, notwithstanding the movants' assertion that MCHS is a part of the School District "and [is] therefore similarly situated" to the other School District schools. Compl. 7–8, 10.

The movants filed their complaint in state court on August 30, 2018, alleging that the School District's restriction violated the Equal Protection Clauses of both the United States and New Mexico Constitutions and requesting a preliminary and permanent injunction. Begay-Platero v. Gallup McKinley Cty. Sch. Dist., No. D-1113-CV-201800482 (N.M. Dist. Ct., 11th Judicial Dist. 2018); see generally Compl. The School

District removed this action to federal court on September 13, 2018.[2] ECF No. 1. The movants applied for a preliminary injunction hearing, contending that the "specific[] and intentional[]" exclusion of MCHS students from the School District's dances and like events was arbitrary and irrational. Pls.' Appl. for Prelim. Inj. Hr'g ¶ 9 (ECF No. 5). Jurisdiction arises under 28 U.S.C. §§ 1331 & 1367. This memorandum opinion and order constitutes the court's findings and conclusions. Fed. R. Civ. P. 52(a)(2).

## Discussion

A court may issue a preliminary injunction prior to a trial on the merits. See Fed. R. Civ. P. 65. However, a preliminary injunction is an "extraordinary remedy," not a matter of right. Benisek v. Lamone, 138 S. Ct. 1942, 1943 (2018). A movant must show that he (1) is likely to prevail on the merits, (2) is likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities is in his favor, and (4) a preliminary injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The court must weigh all four factors equally, and a movant fails to meet his burden if his showing does not satisfy any one of the four factors. Diné Citizens Against Ruining Our Env't v. Jewell, 839 F.3d 1276, 1282 (10th Cir. 2016). Because the

---

[2] The School District also moved to dismiss the movants' complaint and application for preliminary and permanent injunction. ECF No. 9. The motion is still pending.

movants have not satisfied any of the four factors, their motion for preliminary injunction should be denied.[3]

## A. The Movants Have Not Shown a Likelihood of Success on the Merits

Although a showing of "likelihood" is not as demanding a burden as "certainty" of success, the movants must show more than a mere possibility of success. Diné, 839 F.3d at 1282. Plaintiffs as movants must provide facts and theories sufficiently detailed to present a prima facie case. Planned Parenthood Ass'n of Utah v. Herbert, 828 F.3d 1245, 1252 (10th Cir. 2016); see also Fed. R. Civ. P. 7(b)(1)(B) (a request for a court order must "state with particularity the grounds for seeking the order"); D.N.M.LR-Civ. 7.1(a) (a motion must "state with particularity the grounds and the relief sought"). The movants do not argue that MCHS students belong to a suspect classification, nor do they allege their exclusion violated a fundamental constitutional right. Therefore, and by their own admission, see Compl. ¶ 5, the court undertakes a rational-basis review, inquiring whether no "reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

---

[3] The court applies a heightened standard if the requested preliminary injunction is "disfavored" in one of the following ways: (1) it alters the status quo; (2) it mandates, rather than prohibits, action; or (3) it grants the ultimate relief the movant desires from victory at trial. Free the Nipple–Fort Collins v. City of Fort Collins, 916 F.3d 792, 797 (10th Cir. 2019). A movant requesting a disfavored injunction thus carries a heavier burden and must make "strong showing" on the likelihood-of-success-on-the-merits and balance-of-harm factors. Id. Because the movants fail to meet their ordinary burden, the court need not undertake a heightened-burden analysis.

Under New Mexico state law, charter schools are classified differently from other public schools, notwithstanding public funding. For example, local school districts must allow charter students in grades seven through twelve to participate in school-district extracurricular activities. However, the requirement extends to only activities sanctioned by the New Mexico Activities Association (NMAA), such as academic and athletic competitions. N.M. Stat. Ann. §§ 22-8-23.6, 22-8C-8(A) & 22-13-25. In addition, although state law classifies charter schools as public schools, charter schools operate pursuant to a contract with a "chartering authority," which may be either the New Mexico Public Education Commission, or, as in this case, a local school board. N.M. Stat. Ann. §§ 22-8B-2(A)–(C), 22-8B-9; N.M. Code R. §§ 6.29.1.7(X), 6.80.4.7(D) (defining a chartering authority) & 6.80.4.9 (contents of a proposed agreement between charting authority and charter school for charter application). New Mexico law delineates the powers and duties of chartering authorities, such as to "monitor . . . the performance and legal compliance of charter schools under their authority," to "determine whether a charter school merits suspension, revocation or nonrenewal," and to "develop and maintain chartering policies and practices consistent with nationally recognized principles and standards for quality charter authorizing." N.M. Stat. Ann. § 22-8B-5.3(F)–(H). Even with some oversight, and despite their classification as "public," charter schools are responsible for their own operations and budget, and they are governed not by the local school district, but by a governing body as set forth in their charter contracts. N.M. Stat. Ann. § 22-8B-4(B)–(C). They also retain autonomy to hire their own employees. N.M. Stat. Ann. § 22-8B-10.

At the hearing, the movants sought to downplay New Mexico law's clear distinction between charter and non-charter public schools by offering anecdotal evidence of the School District's oversight capacity. Plaintiff-Movant Sharlene Begay-Platero testified that the Public Education Department website lists MCHS as part of the School District, and that she once heard Superintendent Hyatt comment to an MCHS financial administrator that MCHS was not following the financial procedures of the School District.[4] She also testified that she has attended two MCHS "advisory board" meetings, and she noted that the board is merely advisory because governing authority rests with the School District. Yet she candidly admitted the basis of her testimony was her experience as a parent of MCHS students, and that she had little knowledge of MCHS's funding, the statutory framework within which it operates, or the specifics of the School District's supervisory role as chartering authority. She also admitted she was unaware of any NMAA-sanctioned school dances.

The movants also relied on the testimony by Ben Chavez, the safety coordinator for the School District, who conceded during cross-examination that the School District could demand MCHS produce disciplinary records. The movants contend that, because the School District could not demand disciplinary records from other school districts, MCHS is different. But their contention really has no bearing on whether MCHS is

---

[4] The School District did not object to the introduction of this hearsay statement. In any event, the court may consider hearsay statements when evaluating a request for preliminary injunctive relief. See 13 Moore's Federal Practice - Civil § 65.23 (2019).

different from the *School District's non-charter public schools*, the appropriate comparison.

Superintendent Michael Hyatt testified that, consistent with New Mexico law, the School District, as local chartering authority, is responsible for ensuring compliance with the charter contract. However, he testified that MCHS has its own governing body that sets its own policies, procedures, and budget over which neither he nor the School District have any oversight. MCHS also has complete disciplinary authority over its students; both Superintendent Hyatt and Mr. Chavez testified that the School District has ready access to its own students' disciplinary records, but not the records of MCHS students absent a demand. The ease with which the School District could access its own students' disciplinary records, but not those from other school districts or MCHS, motivated Superintendent Hyatt's decision to restrict social, extracurricular access to only School District students.[5]

The court finds that the testimony of Superintendent Hyatt, corroborated by that of Mr. Chavez, was (1) more informed, (2) consistent with New Mexico law, and (3) more credible than the testimony of Ms. Begay-Platero. New Mexico law makes a clear distinction between charter and non-charter public schools and provides for charter

---

[5] Superintendent Hyatt admitted of one instance of a non-student surreptitiously attending a School District dance. Although the effectiveness of the School District's security measures could inform its constitutionality, rational-basis review requires only that a policy be "rationally related to," not the most effective way of achieving, "a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). The evidence at the hearing supported the stated justification for the policy, notwithstanding that the policy had once been circumvented.

7

schools' independent operations. Although the School District retains broad supervisory authority by statute, the movants fail to show the School District retained the same disciplinary oversight of or control over MCHS as its non-charter public schools. Accordingly, the movants have not shown they are likely to prevail as to whether the School District's disparate treatment of students (students already classified differently under state law) served no rational basis.[6]

**B.     The Movants Have Not Shown They Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

In assessing this factor, the court must look to both the seriousness and permanence of the injury. The injury must not be "merely serious or substantial," but rather, it must be "certain, great, actual and not theoretical." Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). In addition, irreparable injury results if, after a full trial, the court is unable to grant an effective monetary remedy because damages would be inadequate or difficult to ascertain. Planned Parenthood Ass'n of Utah, 828 F.3d at 1252. Ordinarily, when a plaintiff alleges a constitutional injury, such injury satisfies the irreparable-harm factor. See Free the Nipple-Fort Collins, 916 F.3d at 805–06. It follows that the failure to show likelihood of success on the merits necessarily deprives the plaintiff of this presumption, requiring specific substantiation of a finding of irreparable harm. Schrier v. Univ. of Colo., 427 F.3d 1253, 1266–67 (10th Cir. 2005).

---

[6] The court found no evidence of invidious intent or that the stated basis for the policy was pretextual or unworthy of belief.

8

The movants state in both filings only that they "and others similarly situated will be continuously and irreparably harmed" because they cannot attend School District dances. Compl. 3; Appl. for Prelim. Inj. Hr'g 3. Such conclusory allegations cannot support a finding of irreparable injury absent a showing of a likely constitutional harm, and the testimony at the hearing did not suggest irreparable harm.

**C.     The Movants Have Not Shown Either the Balance of the Equities Is in Their Favor or That a Preliminary Injunction Is in the Public Interest**

As for the balance of the equities, the movants must establish that the threatened injury outweighs harm caused by the proposed injunction. Schrier, 427 F.3d at 1258. Here, the movants make no attempt to balance their injury with the potential harm caused by the proposed injunction, nor do they acknowledge any detrimental effect of a preliminary injunction. On the other hand, the School District offered testimony that its policy was genuinely in response to concerns of unidentifiable persons on its campuses during closed social events. Thus, the School District limited attendance to only those students it could discipline and of whom it could easily ascertain disciplinary status. The School District also offered testimony that obtaining disciplinary records from MCHS students, although possible, requires additional effort. The movants have failed to show their harm outweighs the administrative burdens and security risks to the School District should the court grant their preliminary injunction request.

Turning to the fourth factor, although a prevention of a constitutional violation is "always in the public interest," Verlo v. Martinez, 820 F.3d 1113, 1127 (10th Cir. 2016) (internal quotation marks omitted), a movant must establish the likelihood of a

9

constitutional violation. The movants failed to establish such likelihood, let alone offered a reasoned argument for their statement that a preliminary injunction would "serve the public interest." Compl. 3; Appl. For Prelim. Inj. Hr'g 3.

NOW, THEREFORE, IT IS ORDERED that Plaintiffs-Movants Sharlene Begay-Platero and John Platero, Jr.'s motion for preliminary injunction as requested in their Application for Preliminary Injunction Hearing (ECF No. 5) filed September 19, 2018, is denied.

IT IS FURTHER ORDERED that the assigned magistrate judge shall schedule a status conference with the parties.

DATED this <u>7th</u> day of May 2019, at Santa Fe, New Mexico.

<u>/s/ Paul Kelly, Jr.</u>
United States Circuit Judge
Sitting by Designation

Counsel:

David R. Jordan, The Law Offices of David R. Jordan, P.C., Gallup, New Mexico, for Plaintiffs.

Andrew M. Sanchez and Carlos J. Padilla, Cuddy & McCarthy, LLP, Albuquerque, New Mexico, for Defendant.